**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**August 19, 2014**

**TENTH CIRCUIT**

ADELINA GARCIA; ANTONIO
GARCIA; JERONIMO VARGAS-VERA;
EFRAIN AGUILAR; PAULINA
AGUILAR; ADELAIDA AGUIRRE;
JOSE R. AGUIRRE; SALVADOR
ALMANZA; MIGUEL AMAYA;
ROGELIO ANDRADE; JESUS
ANGUIANO; EFIGENIA ARANA; JOSE
R. ARANA; RAMON ARANA; ALMA
ARMENDARIZ; JORGE L. BANDA
VALADEZ; DELFINO BARRAGAN;
LUCIA BARRAGAN; RAMON P.
BARRAGAN; HOLGA BENITEZ;
BALTAZAR BONILLA; MARIA
GUADALUPE BONILLA; CATALINA
BUSTILLOS; BERNARDO
CALDERON; ETELVINA CALDERON;
GLORIA CALZADA DE CARILLO;
MANUEL CALZADILLAS; JOAQUIN
CAMACHO; ROBERTO CANO; ROSA
M. CANO; ALBERTO CARRILLO;
JAVIER CARRAVAJAL; LUIS
CASTANON; MARIA ROSARIO
CASTILLO; VICTOR CASTILLO;
DAVID CASTRO; CIPRIANO CERNA;
FLAVIO CHAVEZ; JOSE A. CHAVEZ;
GRISELDA CLARO; JESUS CLARO;
JOSE L. CONTRERAS; ELISEO PEREZ
CORREA; AGUSTIN CRUZ; FLOR
ANGELA CRUZ; LORENZO CRUZ;
SOCORRO DE LEON; AURORA
CHAVEZ DE MONTES; JAVIER
DELGADO; JOSE N. DELGADO;
LILIANA MARTINEZ DELGADO;

No. 12-3346

LOREZO DELGADO; GILDARDO RAMON DIAZ; ROSA D. DIAZ; CARMELO G. DIAZ-SANTAMARIA; ANA DURAN; EDGAR E. DURAN; ABE DYCK; ELIZABETH DYCK; FERNANDO H. ESCALANTE; MARINA ESCALANTE; CANDIDO HERNANDEZ ESCOBEDO; CARLOS E. ESPINO; FRANCISCO ESTRADA; HUMBERTO ESTRADA; MARIA ESTRADA; AIDE B. ESTRADA VITAL; JESUS FELIX; JOSE FLORES; JUAN JOSE FLORES; TOMASA FRAIRE; ERASMO GALAN; MARICELA GALAN; ROMUALDO GALAN; GLORIA GALAVIZ; ROCIO GALAVIZ; CIRO GALVEZ; SILVIA REYES GALVEZ; AGUSTIN GARCIA; BERTHA GARCIA; HUMBERTO PEREZ GARCIA; LUZ E. GARCIA; MAURO GARCIA; MOISES GARCIA; MARIA S. GLORIA; ELIA GOITIA; MELQUIADES GONZALES; JUAN M. GONZALEZ; MARIA T. GONZALES; MIGUEL LORENZO GONZALEZ; ROSARI MELENDEZ GRANDE; MANUEL GUERRERO; SAMUEL GUEVARA; ANGEL R. GUTIERREZ; EUSEBIO GUZMAN; JUANA GUZMAN; LETICIA GUZMAN; ROSENDO GUZMAN; SILVIA GUZMAN; ELIZABETH C. HAMILTON; HERBER RUFINO HENRIQUEZ; ALBERTO HERNANDEZ; EFREN HERNANDEZ; ELIDA HERNANDEZ; FELICIANO HERNANDEZ; FIDEL HERNANDEZ; GUADALUPE HERNANDEZ; JESUS HERNANDEZ; JORGE HERNANDEZ; MARIA HERNANDEZ; MIGUEL

2

ANGEL HERNANDEZ; ROSA HERNANDEZ; WENCESLAO C. HERNANDEZ; WILFRIDO HERNANDEZ; ADRIAN S. HERRADA; AIDA HERRADA; ALFONSO HERRADA; MARIA GUADALUPE HERRADA; ELIZABETH HERRADA DE CRUZ; RANDY HOSKINSON; OSCAR INTERIANO; MARTIN H. ISCO; MARGARITA LEANOS; PEDRO LEYVA; CELSA LEYVA DE GARCIA; BLANCA E. LIRA; DIANA LOPEZ; GENARO LOPEZ; LAURA LOPEZ; LAURO LOPEZ; MARGARITO LOPEZ; MARIA DEL CARMEN LOPEZ; MARIA DE LA LUZ LOPEZ; MAURA LOPEZ; MIGUEL A. LOPEZ; MIGUEL Z. LOPEZ; RODOLFO LOPEZ; MODESTO LOYA; JOSE A. LUJAN; MANUELA O. GARAY DE LUJAN; BEATRIZ MADERA; MONICA MARMOLEJO; FELICIANO MARTINEZ; FIDEL MARTINEZ; GANDINO MARTINEZ; LETICIA MARTINEZ; NESTOR MARTINEZ; RAFAELA ORTIZ MARTINEZ; SATURNINO MARTINEZ; MARIO MAYA; DOMINGO MARTIN MEDINA; RAMIRO MEJIA; MARIA DORA MENDEZ; RODOLFO MENDEZ; BEATRIZ MENDOZA; IRENE E. MERINO; DIONILA MEZQUITA; MARIA MOLINA; MAXIO A. MOLINA; SERGIO A. MONRREAL-ROCHA; RAUL MONRROY; ALFONSO MONTANO; LUIS MONTERROZA; ADRIAN MORALES; FRANCISCA MAGALLANES MUNIZ; ALFONSO MURCIA; CARLOS MURGUIA; ABRAHAM SOSA; ABEL

3

NAVARRETE; ALBERTO TAMAYO; LORENZO NAVARRETE; SONIA TAMAYO; RAMON NAVARRETTE; ALISIA NIETO; JOSE J. TERRAZAS; ISAAC OLGUIN; MARIA TERRAZAS; JAVIER OLGUIN; MARY OLGUIN; ALBARO TORRES; MARIA D. OLIVAS; SANG THI TRAN; LAURO ORTEGA; THANH NGOC TRAN; MARIA ROSA ORTEGA; MARICELA LARES ORTEGA; MARIA URRUTIA; YOLANDA ORTEGA; ROLANDO VAILLANT; FRANCISCO A. ORTEZ; MARIA E. VALADEZ; MANUEL OSORIO; YASMIN VALADEZ; JOSE RAUL PALACIOS; MARIA ANGELINA PALACIOS; GILBERTO ARMANDO VALENCIA; MIGUEL PERALES; ABRAHAM VALLEJO; BERTHA PEREZ; GABRIELA PEREZ; BERTHA VALLEJO; JORGE L. PEREZ; MARIANA VANEGAS; MARTHA PEREZ; GERARDO C. VARELA; JOSE ALEJANDRO PINEDA; ALEJANDRO PONCE; JOSE VASQUEZ; IRMA PONCE; RAYMUNDO VASQUEZ; JUAN PONCE; SALVADOR VASQUEZ; JOSE VICTOR PRIETO; ROSA MARIA VELASCO; EUGENE PROKOPINSKI; SAUL VELASCO; JUAN ENRIQUE RAMIREZ; MARIA RAMIREZ; NICOLAS RAMIREZ-ACOSTA; JOSE RENTERIA; ALMA RESENDIZ; ESTEBAN RESENDIZ; SANDRA RESENDIZ; JOSE A. REYES; FRANCISCO J. VELAZQUEZ; IRMA G. VELAZQUEZ; MIRIAM DEL CARMEN REYES; FRANCISCO MONTES RIOS; REYMUNDO VIANA; SALVADOR ALVAREZ RIVERA; JESUS VILLEDA;

4

JORGE ROBLES; SANTIAGO VILLEGAS, JR.; LUZ M. ROCHA; SERGIO ZAMORA; GUADALUPE RODRIGUEZ; JOSE R. RODRIGUEZ; MARINA RODRIGUEZ; RAFAEL RODRIGUEZ; ROSA RODRIGUEZ; SALVADOR ROMERO; RUBEN N. SALAS-ORTIZ; RICARDO SALDANA; SIXTO SALDANA; CANDIDO MARINO SANCHEZ; ROSA MARIA SANCHEZ; RAMON SANDOVAL; DANIEL SANTACRUZ; LUIS A. SANTACRUZ; JOAQUIN SANTOYO; SOFIA E. SAUCEDA; ALEJANDRO SERRANO; ARMANDO SERRANO; FERNANDO SERRANO; SERGIO SERRANO; BRENDA SERRATO; RAFAEL SOLIS; DAVID S. SOLORZANO; AARON SOSA; MIGUEL AGUILERA; JUANA ALMANZA; MANUEL ALMANZA; BENITO BARRAGAN; MARIA CERRITOS; ISMAEL CHAIREZ; SARA CHAVARRIA; RAQUEL ESTRADA; ANA R. FLORES; JOSE HUERTA; SOPHIA LAMDERO; ARNULFO LIRA; GABRIELA LIRA; JULIA LOPEZ; MANUEL DE JESUS LOPEZ; MARIA A. MARTINEZ; MARIA GUADALUPE MARTINEZ; MAREIAL MORALES; ESTELA MURGUIA; ARMANDO NUNEZ; MICHELLE ORTEGA; OMAR ORTEGA; LUIS ORTIZ; ROSALIA PEREZ; SOCORRO PEREZ; MARIA PEREZ-SERRANO; MELANIA PINEDA; JOSE RAMIREZ; PETER RAMIREZ; STEVEN RAMIREZ; DIANA RAMOS; BLANCA SALMERON; FELIX SOLOZANO; VASHON L. TELFAIR; ARTURO

5

VILLANUEVA; IRINEO ZEPIEN; CARLOS ACOSTA; ELIAS MURILLO AVALOS; HUGO CASTRUITA; ALICIA MUNOZ HERNANDEZ; FRANCISCO HUEREQUE; ALICIA MARTINEZ; JOSE G. MARTINEZ; PEDRO NEAVE; CATALINA ALVARAEZ DE NICHOLS; EDUARD NICHOLS; MARIA DEL CARMEN PEREZ; MARIA MARGARITA RENOVA; ALICIA SANCHEZ; MACARIO R. FARIAS; PRIMITIVO GALVEZ; MARIA LOURDES GONZALES; GASPAR BENITO LUX; ENRIQUE MUNOZ; GREGORIA RAMIREZ; SALVADOR SANCHEZ; AURA SANTACRUZ; JOSE I. VALDEZ; HECTOR GARCIA VALLES; JESUS AGUILAR; MARIA A. ARREOLA; FEDERICO G. BALTAZAR; ARMANDO CASTILLO; ABIGAIL CHAIREZ; MARIA ESTRADA CHAIREZ; PATRICIA CORREA; ANGELICA MARIA NUNEZ ENRIQUEZ; JOSE ANSELMO ENRIQUEZ; FRANCISCO ESQUIVEL; HUMBERTO ESQUIVEL; TOMAS FELIX; MARIA FLORES; SAMUEL GOMEZ; ELIZABETH GONZALES; KRISTAL GONZALEZ; RONALD W. HARDEN; TEODOLO HEREDIA; MARIO HERRERA; RIBORGERTO JOHNSON; JOSE DE JESUS LIAMAS; LUIS E. LOZANO; MARIO CHAIREZ MARES; EUSEBIO MARROQUIN; MARIA NOELI MONTOYA; NORMA NAIERA MORALES; HUGO ORTEGA; ROSALBA ORTEGA; GONZALO PADILLA; MERCEDES RAMIREZ; SALVADOR ROJO; RODOLFO

RUBALCAVA; ROSINDA DE JESUS UCLES; IGINIO CRUZ; FELIPE BRAVO; CHARLES VELAZQUEZ BAEZ; REYNA LOPEZ; AURORA ALDANA; EDUARDO F. NOLASCO; PEDRO BALTAZAR; EDDIE PRIETO; JACIMTO ALMAREZ; CARLOS MARTINEZ; MARIA MARTINEZ; JOSEFINA GARCIA DE RODRIGUEZ; FELIMON RODRIGUEZ; JOSE MARTIN HERNANDEZ; JOSH LUNDBLADE; NORA DURAN; SANDRA M. HERNANDEZ ALFARO; FAUSTO VASQUEZ; JOSE HERNANDEZ; JORGE HINOJOSA; SEVERIONA HINOJOSA; GILBERTO GUILLEN; CRUZ P. RAMIREZ; VIDALINA G. GALVAN; ANTHONY GARCIA; ASCENCION GARCIA; ROBERTO AGUILAR; ROBERTO ALMEDA; BLANCA BENITEZ; DAVID CHAVEZ; LUIS ALBERTO SANTACRUZ CASTANEDA; MARTIN FACIO; FEDERICO CHAVEZ; AARON FINDLEY; ANTONIO HINOJOS; MARIA LAGUNA GUERRA; JOEL GARCIA MAEDA; JOSE MORALES; ELIZABETH ONTVEROS; JOEL ORTEGA; MANUELA ORTEGA; JUAN REYES; PEDRO REYES; HELADIO RIVAS; CARMELITA ROSALES; FEDERICO ROSALES; ALFREDO RUTIAGA; REYNA SALINAS; RAMON SOTO; JOSE ARRAS; MARIA DEL CARMEN; ELAINE ROMERO; CARLOS MENDIAS; SABRINA GARCIA; ADAMS MURILLO; AMALIA MORALES; MICHAEL LIBARRA; ARTURO CELIS; SONYA MARIBEL HERNANDEZ; MARIA

7

GERRERO; WILFRIDO INGLES; EDELMIRA VELAZZO; SHARON SMITH; RAMON PEREZ; CINDY CISNEROS; DORA ALICIA MARTINEZ; AMADO FIGUEROA; GUADALUPE QUESADA; PATRICIA ANGUIANO; JOSE LUIS BARRON MENDEZ; MARIA PONCE; LEONARDO GODINEZ VILLALOBOS; J. R. OTERO; ALVARO TORRES; FIDEL REYES; ISMAEL LOPEZ; JOSE VALADEZ; RAFAEL RUIZ; LEOPOLDO SANCHEZ; SAUL RIVERA; MIGUEL ENRIQUEZ; RICARDO MARTINEZ; GLORIA GARCIA; JOSE MINEROS; INES LOPEZ; PEDRO S. HERNANDEZ; ALEJANDRO SOLORZANO; FRANCISCA QUINTANA; CRUZ GUEVARA; CRISTINA TUCKER; PASCUAL BARCENAS; MIGUEL CORTEZ; MARIA ELENA GOMEZ; ROQUE SOTO; ARMANDO AGUIRRE; JESUS ALVAREZ; GALINDA BANUELOS; LETICIA CARDEMAS; MARIA DAMIAN; GUILLERMO DOMINQUEZ; CARLA ESPINO; OSCAR GALVEZ; BERNABED GRAMAJO; FRANK GUEBANC; FRANCISCO GUERRERO; ANTONIA HERNANDEZ; LETICIA HERNANDEZ; MARCO ANTONIO HERNANDEZ; JOSE MARTINEZ; JOSE LUIS MEDINA; MARTHA MARIA MENDIOLA; SILVIA NAVAR; DAVID RAMIREZ; MARIA I. REYES; FRANCISCO RICO; JUAN RICO RODRIQUEZ; LAWRENCE STEADHAM; MARTIN TERRAZAS, JR.; BERTHA F. TREJO; JUAN

8

VIRQUEZ; ISAAC ADAME,

        Plaintiffs – Appellees,

v.

TYSON FOODS, INC.; TYSON FRESH
MEATS, INC.,

        Defendants – Appellees. .

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:06-CV-02198-JTM)**

---

George A. Hanson (Todd M. McGuire with him on the briefs), Stueve Siegel Hanson LLP, Kansas City, Missouri, for Plaintiffs-Appellees.

Michael J. Mueller, Hunton & Williams LLP, Washington, D.C. (Craig S. O'Dear and Terence J. Thum, Bryan Cave LLP, Kansas City, Missouri, with him on the briefs), for Defendants-Appellants.

---

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

---

        A group of employees filed class and collective actions against Tyson Foods, Inc., seeking unpaid wages for time spent on pre- and post-shift activities.

9

After the employees obtained a sizeable verdict and fee award,[1] Tyson

unsuccessfully moved for judgment as a matter of law. On appeal, Tyson: (1)

challenges the judgment and denial of the motion for judgment as a matter of law,

and (2) argues that the fee award was excessive. We reject Tyson's contentions.

The Plaintiffs presented sufficient evidence of undercompensation and the district

court acted within its discretion in setting the fee award. Thus, we affirm.

## I.      Compensation for Pre- and Post-Shift Activities

Tyson produces food products and has employed all of the plaintiffs at a

production facility in Finney County, Kansas. The jobs required the Plaintiffs to

wear certain protective clothing and equipment.[2] Thus, before each shift, the

Plaintiffs would put on the clothing and equipment, removing them when the shift

was over.

The Plaintiffs were paid through two systems: (1) "gang time," which was

intended to compensate for time spent working on the production line, and (2)

"K-Code" time, which was intended to compensate for time spent on pre- and

---

[1]      The district court also assessed costs against Tyson, but the cost assessment is not at issue.

[2]      These items include shin guards, mesh aprons, legging aprons, belly guards, knives, mesh gloves, Polar gloves, Polar sleeves, plexiglass arm guards, mesh sleeves, and knocker vests.

post-shift activities, such as putting on protective clothing and equipment, taking them off, and walking to and from the work stations.[3]

Tyson implemented the K-Code in 1998. Initially, the K-Code equaled 4 minutes and applied only to employees working in knife-wielding departments. Tyson revised the K-Code in January 2007, making knife-wielding employees eligible for up to 7 minutes of K-Code time. A third revision occurred in April 2010, when Tyson increased the K-Code minutes and allotted them to all hourly production workers. Tyson eventually allotted 20-22 minutes of K-Code time for each shift, depending on the job.

## II.    The Litigation

The Plaintiffs sued Tyson, invoking the Fair Labor Standards Act and the Kansas Wage Protection Act and alleging insufficient compensation for pre- and post-shift activities.[4] The district court certified the matter as a collective action under the Fair Labor Standards Act and a class action under the Kansas Wage Protection Act.

---

[3]     The "K" in "K-Code" stands for "knife" because, when originally implemented, the K-Code applied only to workers who had to carry knives. II Appellant's App. at 152.

[4]     The Fair Labor Standards Act requires employers to compensate employees for overtime work at a rate of "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1) (2006). The Kansas Wage Protection Act requires employers to pay "all wages due to its employees." Kan. Stat. Ann. § 44-314(a) (2007).

A jury found that Tyson had undercompensated the Plaintiffs for pre- and post-shift activities, fixing damages at $166,345 under the federal statute and at $336,666 under the state statute.

After the district court entered judgment for the Plaintiffs, Tyson moved for judgment as a matter of law, arguing that the evidence did not support the verdict and that the court should have decertified the class and collective actions. The district court denied the motion, reasoning that: (1) the Plaintiffs had presented sufficient evidence to support the verdict, and (2) the Plaintiffs had satisfied the legal requirements for continued certification as class and collective actions.

The Plaintiffs filed a motion for attorneys' fees and costs. Tyson opposed the motion and moved to compel production of counsel's timekeeping records. The district court denied the motion, opting instead to review the timekeeping records in camera. The court eventually awarded attorneys' fees totaling $3,389,207.41.

This appeal followed.

## III.   Sufficiency of Evidence

Tyson argues that the evidence was insufficient to support the verdict because the Plaintiffs did not prove unpaid time on a class-wide basis. We

conclude that the jury could have reasonably inferred class-wide liability based on the trial evidence.

### A. Standard for Sufficiency of the Evidence

We review the district court's ruling de novo and will reverse only if "'the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'" *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002) (quoting *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999)).

### B. The Reasonableness of a Finding of Class-Wide Liability

For the federal and state claims, the overarching question for the jury was whether the K-Code system had resulted in underpayment. The jury answered this question "yes." Our task is to determine whether this answer was reasonable based on the evidence. It was.

The jury could have reasonably approached liability by addressing two questions:

- Did Tyson pay its employees for all of the time they spent at work?

- If not, how much of that time was spent getting in and out of protective clothing and equipment and walking to and from the work stations?

To answer the first question, the jury could have relied on Tyson's own internal study. This study compared: (1) the number of hours for which

13

employees were paid (through the combination of gang-time and K-Code time), with (2) the total number of hours that employees spent at the work site (as shown by their "clock in" and "clock out" times). This study showed that on average, Tyson employees were not paid for more than 29 minutes per shift.[5]

The resulting question for the jury was how many of these 29+ minutes were spent getting in and out of protective clothing and equipment and walking to and from the work stations. To answer this question, the jury could have

---

[5]     Tyson's study showed:

- a total of 66,871.6 hours of gang-time,

- a total of 71,399.94 hours for the time spent at the work site (based on the times the employees "punched in" and "punched out" with time cards),

- a total of 640.57 hours that Tyson attributed to getting in and out of the protective clothing (reflected in the K-Code), and

- a total of 7,816 shifts.

*See* Supp. App. at 339-41.

Thus, Tyson paid employees for 67,512.17 hours (gang time of 66,871.6 hours + K-Code time of 640.57 hours). A total of 3,888.77 hours went uncompensated (71,399.94 hours based on the "punch in"/"punch out" time — 67,512.17 hours reflecting the sum of the gang time and K-Code time). The employees were uncompensated 3,888.77 hours over the course of 7,816 shifts. Thus, for each shift, employees were not paid 49.74% of an hour for each shift.

$$\frac{3{,}888.77 \text{ hours}}{7{,}816 \text{ shifts}} = 49.74\% \text{ (hour/shift)}$$

Converted to minutes, the 49.74% of an hour per shift equaled 29.84 minutes per shift.

$$49.74\% \text{ hour/shift} \times 60 \text{ minutes} = 29.84 \text{ minutes/shift}.$$

14

reasonably relied on employee testimony, testimony from Dr. Radwin, and evidence involving Tyson's increases to the K-Code.

First, the Plaintiffs presented testimony from three employees: Ms. Adelina Garcia, Mr. Antonio Garcia, and Mr. Jeronimo Vargas-Vera. These employees testified that they had spent 5-12 minutes each shift putting on and taking off their protective clothing and walking to and from the work stations. But Tyson allocated only 4 to 7 minutes for those activities from May 2003 to April 2010.

Second, the Plaintiffs presented expert testimony from Dr. Robert Radwin, who measured the time spent on pre- and post-shift activities for 67 employees.[6] Dr. Radwin observed that the employees spent an average of 20.85 minutes on pre- and post-shift activities.

Third, Tyson increased the K-Code at least three times between May 15, 2003, and December 31, 2010. For roughly 91% of this period (May 15, 2003, to April 11, 2010), Tyson paid its employees 4-7 minutes of K-Code time per shift. Though the job responsibilities did not change, Tyson later increased the K-Code minutes.

---

[6] Pre-shift activities were measured for 39 of the employees, and post-shift activities were measured for the other 28 employees.

Tyson acknowledged that the K-Code was intended to compensate employees for certain activities before and after the shifts.[7] Thus, the jury could have inferred recognition by Tyson that until 2010, it had underestimated the time required to get in and out of the protective clothing and equipment and to walk to and from the work stations.

We do not know how the jury ultimately decided to find class-wide liability. But we do know that there was a reasonable basis for the jury's finding of systematic undercompensation. Thus, the evidence was sufficient for the finding of class-wide liability.

## C.    Liability as to Each Class Member

Though the evidence sufficed for the Plaintiffs as a group, Tyson challenges the proof of undercompensation for each class member. This argument is unpersuasive for three reasons:  (1) such proof was unnecessary; (2) the jury could rely on representative evidence; and (3) Tyson relies on cases that are inapplicable.

---

[7]    Tyson denies having admitted that its K-Code changes reflected "the amount of time spent by each class member on the subject activities." Tyson's Reply Br. at 7 (June 21, 2013). But Tyson did admit that it intended the K-Code time "to compensate certain production employees for time spent conducting pre and post shift donning and doffing of certain unique clothing and equipment." XI Appellant's App. at 2226-27; II Appellant's App. at 146, 246. And the jury could reasonably attribute the increase in K-Code minutes to recognition that the employees spent more time on pre- and post-shift activities than Tyson had estimated. *See* Appellee's Supp. App. at 385 (2010 memorandum stating that Tyson increased the K-Code minutes in 2010 "for time spent putting on clothing and equipment, cleaning up, and walking to and from their jobs").

First, the Plaintiffs did not need to individualize the proof of undercompensation once the district court ordered certification as a class action and collective action. *See First Alliance Mortg. Co. v. Lehman Commercial Paper, Inc.*, 471 F.3d 977, 992 (9th Cir. 2006) (holding that the plaintiff's evidence of class-wide liability for fraud was sufficient, notwithstanding variations among the communications to class members, reasoning that "[t]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his representations across the class of victims").

Second, the jury could reasonably rely on representative evidence to determine class-wide liability because Tyson failed to record the time actually spent by its employees on pre- and post-shift activities. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (stating that plaintiffs under the Fair Labor Standards Act need not "prove the precise extent of uncompensated work" when "the employer's records are inaccurate or inadequate"); *see also Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 371-72 (4th Cir. 2011) (upholding the district court's use of average don-and-doff times from a time-study report authored by Dr. Radwin).

Third, Tyson relies on cases such as *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541 (2011), *Thiessen v. Gen. Elec. Corp.*, 267 F.3d 1095

17

(10th Cir. 2001), *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), and *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291 (E.D. Pa. 2010), which involve class certification, not sufficiency of the evidence. Because Tyson does not appeal the district court's certification rulings, the cited cases do not apply.

For these reasons, we conclude that the jury could have reasonably inferred that each class member was undercompensated.

### D. Damages for Employees Who Were Not Underpaid

The jury awarded less to the Plaintiffs than they had requested. As a result, Tyson argues that the jury must have assessed liability for some class members who were not undercompensated. According to Tyson, this assessment was unsupportable and the jury's "lower" damage award means that "even more class members would have fallen out of liability." *See* Appellant's Opening Br. at 40; Appellant's Reply Br. at 11. We disagree because: (1) the evidence supported a finding of undercompensation for every class member, and (2) Tyson's argument rests on speculation about how the jury calculated damages.

First, as discussed above, the jury could have reasonably found undercompensation for each class member. With this finding, the jury could have calculated damages class-wide.

18

Second, Tyson's argument rests on speculation about how the jury calculated damages. Such speculation is improper as long as the award is within the range of evidence. *See Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1288-89 (10th Cir. 2000) (upholding a damage assessment that was "within the range of evidence," although the award was equal to the amount stated in expert testimony that was ultimately stricken). Here, the damages award was within the range of evidence. Thus, we cannot entertain Tyson's speculation that the jury might have awarded damages to some class members who had been fully compensated.

## IV. Attorneys' Fees

The Fair Labor Standards Act provides a right to attorneys' fees for prevailing plaintiffs. 29 U.S.C. § 216(b) (2006). Based on this statute, the district court awarded the Plaintiffs $3,389,207.41 in attorney fees. Tyson appeals this award, raising three arguments: (1) Tyson was entitled to production of itemized time records for Plaintiffs' counsel; (2) the Plaintiffs were not entitled to recover for time spent on unsuccessful federal theories or any of the state claims; and (3) the fee award was too high given that the jury awarded only 8% of the damages that the Plaintiffs had sought in their closing argument.

19

### A. Production of Time Records

Tyson asked the district court to compel production of itemized time records for Plaintiffs' counsel. The district court denied the motion, opting instead to review the records in camera, allow each side to depose someone familiar with the adversary's billing, and order disclosure to the adversary of billing rates and time incurred. The district court noted that this procedure would: (1) eliminate time spent reviewing the numerous billing documents, and (2) allow parties to make appropriate objections based on privilege. Tyson obtained the information ordered by the district court, but chose not to depose anyone familiar with the Plaintiffs' billing.

Tyson appeals, arguing that it could not respond meaningfully to the Plaintiffs' fee application without production of itemized time records. We review the district court's discovery decisions for abuse of discretion[8] and will reverse only if Tyson makes a "clear showing that the denial of discovery resulted in actual and substantial prejudice."[9] Applying this standard, we hold that the district court did not abuse its discretion in denying Tyson's motion.

Under Fed. R. Civ. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it

---

[8]     *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003).

[9]     *Davoll v. Webb*, 194 F.3d 1116, 1139 (10th Cir. 1999) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996)).

determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive."

The district court set out to regulate discovery of fee information because of ongoing litigation. This litigation involves a similar suit for undercompensation at a Tyson facility in Emporia, Kansas. At Tyson's request, the district court bifurcated the litigation and tried the Finney County case before the Emporia case. II Appellant's App. at 225. The Emporia case had not yet been tried when attorneys' fees were sought for the Finney County case.

With another trial looming in the Emporia case, the Plaintiffs' attorneys feared that production of itemized time records for the Finney County case would reveal legal strategies and allow Tyson to adapt its defense. To avoid this risk, the district court crafted a procedure for defense counsel to obtain summaries, depose a representative of the Plaintiffs, and allow in camera review of the itemized billing records. In crafting this procedure, the district court acted within its discretion. *See Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (upholding the district court's in camera review of unredacted attorney invoices because they would constitute work product and the parties had other ongoing litigation).

21

**B.** **Fee Recovery for Time Spent on State Claims and Unsuccessful Federal Claims**

Tyson argues that the Plaintiffs were not entitled to recover fees for time spent on any of the claims under the Kansas Wage Protection Act or the unsuccessful claims under the Fair Labor Standards Act. The Plaintiffs had pursued three distinct theories of underpayment: (1) failure to pay for pre- and post-shift activities; (2) failure to pay for meal times; and (3) failure to pay for time in rest breaks. The Plaintiffs prevailed on only the first claim: failure to pay for pre- and post-shift activities. Tyson argues that the Plaintiffs should not have recovered fees for time spent on the state claims or the unsuccessful federal claims involving underpayment for meal times and rest breaks. This argument is rejected.

We review the district court's determination of attorneys' fees under an abuse-of-discretion standard. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1200-01 (10th Cir. 1986).

"Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Claims are related if they are based on "a common core of facts" or "related legal theories." *Id.* at 435; *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995). Conversely, a plaintiff cannot recover fees for time spent

22

on unsuccessful claims that are "distinct in all respects from his successful claims." *Hensley*, 461 U.S. at 440.

The district court could reasonably infer a relation between: (1) the successful federal claims, and (2) the state claims and the unsuccessful federal claims. All were factually related and arose under a common legal theory: failure to pay for some of the compensable time involving the donning and doffing of protective gear. This legal theory provided the backdrop for various claims that bore at least some connections.

The connections can be illustrated in:

- the claims under the Kansas Wage Protection Act,

- the claims involving failure to compensate for meal times, and

- the claims involving failure to compensate for break times.

The first example involves the Kansas Wage Protection Act. For claims under this law, the jury's only task was to determine whether "Tyson failed to compensate plaintiffs as required under the Fair Labor Standards Act." *Id.* at 255. The jury's root function was the same for both statutes, and the district court could reasonably view the federal and state claims as interrelated.

The second example involves the claims for compensation of meal times. These claims involved the parts of the meal times spent getting in and out of the protective clothing and equipment and walking to and from the production line.

23

XII Appellant's App. at 2328-29 (defense counsel); *id.* at 2334 (Plaintiffs' counsel). These activities also underlie the Plaintiffs' claims, which ultimately prevailed, under the Fair Labor Standards Act. Because these activities were the same, the district court could reasonably view the meal claims as interrelated with the federal claims for pre- and post-shift activities (which ultimately triggered the award of attorney fees).

The third example is the Plaintiffs' theory involving failure to compensate for breaks during the work day. The Plaintiffs presented this theory as a separate basis for relief, and the jury found for Tyson on this claim. But the Plaintiffs also presented this theory as part of the federal claims for failure to pay for pre- and post-shift activities, alleging that Tyson stopped paying for breaks when it increased the K-Code time for pre- and post-shift activities. II Appellant's App. at 153. As a result, the district court could reasonably infer a relation between the federal claims involving failure to fully pay for: (1) pre- and post-shift activities, and (2) breaks during the work-day.

Tyson argues that two factual and legal distinctions existed between the successful federal claims and the claims involving meal time and break time:

- the meal-time claims had an additional element (proof that the time spent was predominantly for the employer's benefit), and

- the break-time claims were distinct because the Plaintiffs sought compensation for all of the time (rather than just the time getting

24

into and out of the protective clothing) and involved a separate regulation (29 C.F.R. § 785.18).

Based on these distinctions, Tyson argues that the district court should have viewed the claims as distinct. We disagree. The issue for the district court was not whether there were differences between the claims. Instead, the issue was whether the district court had discretion to regard the unsuccessful meal- and break-claims as related to the successful claims for time spent walking and getting into and out of the protective clothing and equipment. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1120 (10th Cir. 2001). Based on the existing appellate record,[10] we conclude that the district court had discretion to view the claims as interrelated: Though the claims had some factual and legal differences, the court could reasonably conclude that the similarities justified an award for the time spent in meals and breaks.

The court could reasonably conclude that a relation existed between: (1) the federal claims for pre- and post-shift activities, and (2) the state claims and the federal claims for underpayment involving meals and breaks. Thus, the court did not abuse its discretion in allowing the Plaintiffs to recover fees for time spent on the state claims and the unsuccessful federal claims. *See Diaz v. Robert Ruiz, Inc.*, 808 F.2d 427, 429 (5th Cir. 1987) (recovery of attorneys' fees under the Fair Labor Standards Act includes time spent on other issues when they

---

[10] This record does not include the Plaintiffs' itemized fee records.

25

overlap); *accord Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 136-37 (3d Cir. 1984) (in determining the amount of attorneys' fees available under the Fair Labor Standards Act, the court must consider "the interrelated nature of the lawsuit as a whole"), *abrogated in part on other grounds*, *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 n.11 (3d Cir. 1991).

## C. Fee Reduction Based on a Lack of Proportion to the Damages Award

Tyson argues that the district court should have reduced the fee award because: (1) the jury awarded only 8% of the damages sought by the Plaintiffs in closing argument, and (2) the fee award far exceeds the damages award. We disagree.

In *Hensley v. Eckerhart,* the Supreme Court held that attorneys' fees should vary with the degree of success obtained, but cautioned: "There is no precise rule or formula for making these determinations. . . . The [district] court necessarily has discretion in making this equitable judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 435-37 (1983). If the Plaintiffs obtained "excellent results," they should fully recover their fees; conversely, if the Plaintiffs achieved only "partial or limited success," a full fee recovery may be "excessive." *Id.* at 436.

We review the district court's assessment of the Plaintiffs' success for abuse of discretion. *See Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1178 (10th Cir. 2010). The district court concluded that Plaintiffs' counsel

26

obtained excellent results for their clients. This conclusion fell within the district court's discretion. *See id.* at 1177-78 (upholding the district court's decision to award the full amount of fees requested, based on "substantial success," even though the plaintiff obtained only about 1.3% of the damages she had requested).

Tyson emphasizes that the fee award far exceeded the damages award. But the fee award need not be proportionate to the damages award. *See Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (plurality op.) (discussing an award of attorneys' fees under 42 U.S.C. § 1988). Thus, the district court acted within its discretion even though the fee award substantially exceeded the damages award.

## V.    Conclusion

The district court did not err in denying Tyson's motion for judgment as a matter of law or in setting the amount of attorneys' fees awarded to the Plaintiffs. Therefore, we affirm.